DAS:KKO
F. #2011R01575

**M-11-928**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

BURTON DENNISON and
EARL PRICE,
    also known as "Bigga,"

              Defendants.

- - - - - - - - - - - - - - - - X

C O M P L A I N T

(T. 21, U.S.C.,
§§ 846 and
841(b)(1)(B)(ii); and
T. 18, U.S.C. §§ 3551
et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

    JEFFREY BOLETTIERI, being duly sworn, deposes and says that he is a Task Force Officer assigned to the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

    Upon information and belief, on or about September 14, 2011, within the Eastern District of New York and elsewhere, the defendants BURTON DENNISON and EARL PRICE, also known as "Bigga," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved 500 grams or more of a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

    (Title 21, United States Code, Sections 846 and 841(b)(1)(B)(ii); Title 18, United States Code, Sections 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Deputy Sheriff Investigator with the Suffolk County Sheriff's Office for seventeen years and for approximately eight years, I have been cross-designated as a Task Force Officer with the Drug Enforcement Administration ("DEA") on Long Island. In this position, I am tasked with investigating narcotics trafficking, money laundering and other offenses. During my tenure with the Drug Enforcement Administration, I have participated in numerous narcotics investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds and records of narcotics and money laundering transactions have been found; (c) reviewed and analyzed numerous taped conversations and records of drug traffickers and money launderers; (d) debriefed cooperating drug traffickers and money launderers; (e) monitored wiretapped conversations of drug traffickers and reviewed line sheets prepared by wiretap monitors; and (f) conducted surveillance of individuals engaged in drug trafficking and money laundering. Through my training, education and experience, I have become familiar with (a) the manner in which illegal drugs are imported

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause, I have not set forth all the facts and circumstances of which I am aware.

2

and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement.

2. I am familiar with the facts and circumstances set forth below from information learned through my personal involvement in this investigation, confidential sources and reports made to me by other law enforcement authorities. Except where otherwise noted, the information set forth in this Affidavit has been provided to me by DEA special agents or other law enforcement officers assigned to the DEA or a confidential source.

3. As part of my investigation, I have debriefed a cooperating witness ("CW"), who has pleaded guilty to conspiracy to import cocaine and conspiracy to launder money and is cooperating in the hopes of receiving a reduced sentence. The information provided by the CW has proven to be reliable in the past and has been corroborated by independent evidence, including a recorded telephone call and a recorded meeting between the CW and defendant BURTON DENNISON.

4. The CW advised DEA agents, in sum and substance, that on or about and between September 12, 2011 and September 13, 2011, the CW had a series of telephone conversations with an individual, later identified as defendant BURTON DENNISON. During these telephone calls, BURTON DENNISON agreed to sell the

CW one kilogram of cocaine in exchange for $32,000. They further agreed that they would meet on September 14, 2011 at the Linden Multiplex theater on Linden Boulevard in Brooklyn, New York.

6. On or about September 14, 2011, at approximately 4:30 p.m., DEA agents checked the CW for contraband with negative results and equipped the CW with a digital recording device. Acting pursuant to DEA instructions, the CW drove the CW's vehicle to the parking lot of the Linden Multiplex to meet with DENNISON. Agents observed the CW exit the CW's vehicle and enter a 2007 Mercedes-Benz 300 series (the "Mercedes-Benz"). During the meeting, DENNISON showed the CW a bag containing cocaine and the CW then told DENNISON that the CW was leaving to get money to purchase the cocaine. The CW then exited Mercedes-Benz and gave a pre-arranged sign to DEA agents indicating that the CW had met with DENNISON and that DENNISON had the cocaine in the Mercedes-Benz.

7. Upon the CW's return to the CW's vehicle, agents approached the Mercedes-Benz and arrested DENNISON. Agents located a plastic bag on the floor of the rear area on the passenger-side of the Mercedes-Benz. Inside the bag was powdery white substance which later field-tested positive for cocaine. The weight of the cocaine is approximately 1,012.16 grams.

8. After DENNISON's arrest, agents informed him of his <u>Miranda</u> rights and he contacted his attorney on his

4

telephone. After speaking with his attorney, DENNISON waived his Miranda rights and agreed to speak with agents. DENNISON advised agents, in sum and substance, that he had received the cocaine from a person known to him "Bigga" or "Earl." While speaking with DEA agents, DENNISON's telephone rang several times and the contact name "Bigga" appeared on the screen.

10. On the same date, at approximately 6:00 p.m., acting pursuant to DEA instructions, DENNISON made a consensually recorded telephone call to defendant EARL PRICE using the telephone number associated with "Bigga" in DENNISON's telephone. During this recorded telephone call, DENNISON stated to PRICE, in sum and substance, that he had two flat tires on his vehicle and asked PRICE to come to the parking lot to pick up the money from the sale of the cocaine.

11. On the same date, at approximately 6:20 p.m., DEA agents observed a silver minivan drive into the Linden Multiplex parking lot. The minivan drove slowly past the Mercedes Benz. At that time, DENNISON advised the DEA agents, in sum and substance, that the driver of the minivan was the person known to him as "Bigga" or "Earl." DEA agents then directed the minivan to stop in the vicinity of the entrance to the movie theater and detained the driver, later identified as EARL PRICE.

12. Upon being detained, PRICE advised the DEA agents that he was meeting a woman to go to the movies. DEA agents

waited with PRICE near the entrance to the movie theater for approximately one hour, but no one appeared. PRICE was then arrested.

WHEREFORE, your deponent respectfully requests that the defendants BURTON DENNISON and EARL PRICE, be dealt with according to law.

Dated: Brooklyn, New York
       September 15, 2011

_____
JEFFREY BOLETTIERI
Task Force Officer, DEA

Sworn to before me on
the 15th day of September, 2011

_____
THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK